IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| JUANITA DOE, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | MO:23-CV-00091-DC-RCG |
| MIDLAND COUNTY, JUAN CARLOS | § | |
| SERNA-VENEGAS, SHERIFF DAVID | § | |
| CRINER, SERGEANT PETERS, and | § | |
| MARISELA MARTINEZ, | § | |
|     *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT are Marisela Martinez's Motion to Dismiss (Doc. 16) and Plaintiff Juanita Doe's Response in Opposition (Doc. 17).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the relevant case law, the Court **RECOMMENDS** that Defendant Martinez's Motion to Dismiss be **GRANTED**. (Doc. 16).

### I. BACKGROUND

On June 20, 2023, Plaintiff Juanita Doe ("Plaintiff") filed her Original Complaint against Midland County, Juan Carlos Serna-Venegas, Sheriff David Criner, Sergeant Peters, and Marisela Martinez. (Doc. 1). Plaintiff then filed an Amended Complaint against all Defendants on August 7, 2023. (Doc. 11). Plaintiff asserts causes of action pursuant to 42 U.S.C. § 1983 against Martinez for: (1) cruel and unusual punishment under the Fourteenth Amendment; and (2) denial of equal protection under the Fourteenth Amendment. (Doc. 11 at 12–16).

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Plaintiff's factual allegations involving Defendant Martinez are as follows. She was arrested on May 27, 2021. *Id.* at 6. Soon after her arrest she was placed in the Special Housing Unit ("SHU") of the Midland County Jail. *Id.* Plaintiff asserts the SHU is an area "which was intentionally or knowingly concealed from video monitoring capabilities of the jail video surveillance system." *Id.* According to Plaintiff, this concealment was both apparent and widely known to employees of the jail. *Id.* Plaintiff alleges the SHU's concealment provided "cover and opportunity" for Defendant Serna-Venegas to engage in sexual abuse of female inmates. (Doc. 11 at 6).

On June 30, 2021, Defendant Serna-Venegas entered Plaintiff's SHU cell, closed the cell door most of the way, and "accosted Plaintiff and compelled her to perform an oral sex act upon him." *Id.* Defendant Serna-Venegas then left Plaintiff's cell, but returned an hour or two later. *Id.* This time he "forced Plaintiff to have penetrative vaginal intercourse with him, grabbing her hair and bending her over and forcefully inserting his penis into her." *Id.* Defendant Serna-Venegas threatened Plaintiff with his taser to keep her quiet. *Id.*

After the two assaults, Plaintiff complained to other Midland County Jail correctional officers, resulting in her relocation to another unit away from Defendant Serna-Venegas. (Doc. 11 at 6). Plaintiff alleges that before her relocation, Defendant Serna-Venegas came back on "additional occasions" and threatened her with bodily harm if she told anyone about what happened to her. *Id.*

Plaintiff alleges Defendants Midland County, Sergeant Peters, and Marisela Martinez knew Defendant Serna-Venegas was a "sexual predator, very reckless and loose in a sexual manner, and someone who would take sexual liberties with fellow employees and inmates in the custodial setting." *Id.* at 7. Plaintiff bases this statement off an incident on July 2, 2021 when

Defendant Martinez complained because Defendant Serna-Venegas showed her a video "of him having sex with an individual as they worked in the jail." *Id.* Plaintiff alleges Defendant Martinez believed the video depicted Martinez and Defendant Serna-Venegas. *Id.* However, Plaintiff asserts that it was later determined the video depicted Defendant Serna-Venegas having sexual intercourse with another inmate. (Doc. 11 at 7). Defendant Martinez stated that Defendant Serna-Venegas admitted to her that he had a commercial page on OnlyFans.com and that he "got paid to have sex with other females, including inmates, and post it on his page." *Id.* Defendant Martinez acknowledged she engaged in sexual intercourse with Defendant Serna-Venegas but did not give him permission to video her or to the videos online. *Id.*

Defendant Martinez allegedly told investigators that in the past, Defendant Serna-Venegas would touch her inappropriately while working, and she complained of this behavior to supervisors, including Defendant Peters. *Id.* However, Defendant Peters failed to take any action in response to the conduct of Defendant Serna-Venegas. *Id.* Plaintiff alleges investigators later found seven different videos on Defendant Serna-Venegas's phone of him having sexual intercourse with inmates at the Midland County Jail. (Doc. 11 at 8). These videos date back to January 9, 2021. *Id.*

Additionally, at the beginning of her Amended Complaint, Plaintiff alleges that Defendant Martinez and Defendant Peters "actively knew of the propensities and characteristics of Defendant Serna-Venegas," and, "knew or should have reasonably known of the likelihood that Defendant Serna-Venegas would prey on vulnerable women incarcerated at Midland County Jail, yet they stood by and did nothing to protect those women, whom they also were charged to protect. By their inaction, they became material participants in the deprivation of civil rights under color of law." *Id.* at 2.

On November 16, 2023, Defendant Martinez filed the instant Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. 16). Plaintiff filed her Response in Opposition on November 22, 2023, and Defendant subsequently filed a Reply on December 6, 2023. (Docs. 17, 19). Consequently, the instant matter is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Federal Rule of Civil Procedure 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555–56. However, a plaintiff must do more than recite the formulaic elements of a cause of action. *See id.* at 556–57. Additionally, the Court is not bound to accept as true a legal conclusion couched as a factual allegation in the complaint. *See Iqbal*, 556 U.S. at 678. Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

### III. DISCUSSION

Defendant argues dismissal of Plaintiff's claims against Defendant Martinez is appropriate for two reasons: (1) Plaintiff cannot establish a prima facie case for her § 1983 claims; and (2) qualified immunity bars Plaintiff's claims. (Doc. 16 at 8–14).

A.  *Plaintiff's Cruel and Unusual Punishment Claim*

To begin, the Court notes that Plaintiff's Amended Complaint is ambiguous as to exactly what theory of liability she seeks to pursue against Defendant Martinez as it relates to her claim of cruel and unusual punishment under § 1983. This is because, as Defendant Martinez points out, she was not the person who sexually assaulted Plaintiff. Thus, Plaintiff must pursue either a bystander or failure to protect theory of liability for cruel and unusual punishment. The Court will address both theories of liability, as Defendant Martinez addresses each and Plaintiff does not dispute this framing in her Response. (*See* Docs. 16 at 9–12; 17 at 5).

**1. Bystander Theory of Liability**

The Fifth Circuit's bystander liability doctrine allows a plaintiff to pursue a claim against "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *McDonald v. McClelland*, 779 F. App'x 222, 226 (5th Cir. 2019) (per curiam) (quoting *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).[2] The elements to a bystander liability claim are where the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th

---

2. "Although *Hale* most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability. *See Richie v. Wharton Cnty. Sheriff Dep't Star Team,* No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013) (per curiam) (unpublished) (noting that plaintiff failed to allege facts suggesting that officers 'were liable under a theory of bystander liability for failing to prevent . . . other member[s] from committing constitutional violations')." *Whitley v. Hanna*, 726 F.3d 631, 646 n.11 (5th Cir. 2013).

Cir. 2002)). "However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley*, 726 F.3d at 646–47 (citing *Snyder v. Trepagnier*, 142 F.3d 791, 801 n.11 (5th Cir. 1998)); *see also Ibarra v. Harris Cnty.*, 243 F. App'x 830, 835 n.8 (5th Cir. 2007) (per curiam) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.").

Plaintiff fails to state a claim against Defendant Martinez because her Amended Complaint does not allege, nor does she assert in her Response that Defendant Martinez was in Serna-Venegas's presence when he was sexually assaulting Plaintiff. As a result, Defendant Martinez is not within the scope of a bystander liability claim. *See Whitley*, 726 F.3d at 647 (citing *Hale*, 45 F.3d at 919; *Ibarra*, 243 F. App'x 830, 835 n.8).

### 2. Failure to Protect Theory of Liability

To plead a failure to protect claim under the Eighth Amendment, " 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm' and that the prison officials acted with 'deliberate indifference' to the inmate's safety." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "It is undisputed that '[d]eliberate indifference is an extremely high standard to meet.' " *Edmiston v. Borrego*, 75 F.4th 551, 559 (5th Cir. 2023) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). An "[O]fficial will not be held liable if he merely 'should have known' of a risk." *Id.* (quoting *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020)). "Rather, to satisfy this high standard, plaintiff must plausibly allege both that the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]' and that he 'also [drew] the inference.' " *Id.* (quoting *Converse*, 961 F.3d 775–76).

After this is alleged, then "[a]n official with such knowledge 'shows a deliberate indifference to that risk 'by failing to take reasonable measures to abate it.' " *Id.* (quoting *Converse*, 961 F.3d 775–76).

Based on the above legal standard, Plaintiff must plausibly allege Defendant Martinez's awareness of facts from which an inference could be drawn that Serna-Venegas posed a substantial risk to sexually assault inmates and that Defendant Martinez drew that inference on or before the date Serna-Venegas sexually assaulted Plaintiff. In her Motion, Defendant Martinez argues that each fact alleged by Plaintiff to have given Defendant Martinez knowledge of Serna-Venegas's risk to sexually assault inmates was revealed to Defendant Martinez *after* Serna-Venegas assaulted Plaintiff. (Doc. 16 at 10–11).

In response, Plaintiff argues Defendant Martinez possessed the requisite knowledge because the facts as pleaded imply Defendant Martinez engaged in sexual intercourse with Serna-Venegas in the Midland County Jail and she knew he carried a cell phone in the jail. (Doc. 17 at 6). Plaintiff also argues that if Defendant Martinez had reported Serna-Venegas for having sex with her in the jail, then "it is reasonable to conclude that Defendants Criner and Midland County would have been able to take action against Serna-Venegas that would have prevented the assault of Plaintiff." *Id.* at 6–7. However, according to Plaintiff's Amended Complaint, Defendant Martinez was in a consensual relationship with Serna-Venegas, the Court does not see how this fact equipped Defendant Martinez with the required knowledge to draw the inference that Serna-Venegas was sexually assaulting inmates. (Doc. 11 at 7). Further, Plaintiff does not allege that Defendant Martinez drew such an inference about Serna-Venegas being a substantial risk to sexually assault inmates. Thus, Defendant Martinez did not have the requisite knowledge

to take reasonable measures to abate said risk. This does not meet muster to plead a § 1983 claim for cruel and unusual punishment claim under a failure to protect theory.

*   *   *

Based upon the preceding discussion, the Court **RECOMMENDS** Defendant Martinez's Motion to Dismiss be **GRANTED** and Plaintiff's cruel and unusual punishment claim against Defendant Martinez be **DISMISSED**. (Doc. 16).

B.   *Plaintiff's Equal Protection Claim*

Plaintiff also pleads an equal protection claim against Defendant Martinez based on Plaintiff being a woman. (Doc. 11 at 14–15). Specifically, Plaintiff pleads that "[t]he disparate treatment, discrimination, and harassment described herein was based on Plaintiff's sex and she was negatively affected thereby." *Id.* at 15.

"A 'violation of equal protection occurs . . . when [a state actor] treats someone differently than others similarly situated.' " *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022) (per curiam) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). "A plaintiff 'must allege . . . that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.' " *Id.* (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). Further, "[d]iscriminatory purpose in an equal protection context implies the decision maker selected a particular course of action in part because of, and not just in spite of, the adverse impact it would have on an identifiable group." *Miguel v. Jack*, 23-CV-697-RP-SH, 2023 WL 6466231, at *6 (W.D. Tex. Oct. 4, 2023) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

Defendant Martinez argues dismissal is appropriate as "Plaintiff's allegations contain no facts regarding 'disparate impact' based on status of being female. Plaintiff alleges no facts that Martinez treated male inmates differently than female inmates. Plaintiff alleges no facts demonstrating Martinez treated females differently because they were female. Plaintiff alleges no facts demonstrating Martinez discriminated against Plaintiff because she was a female." (Doc. 16 at 12). After reviewing Plaintiff's Amended Complaint, the Court agrees. Even viewing Plaintiff's allegations in a light most favorable to Plaintiff, they do not amount to an equal protection claim because her Amended Complaint is devoid of factual allegations suggesting Defendant Martinez treated Plaintiff less favorably than she would have treated a male inmate under similar circumstances. Further, Plaintiff's Amended Complaint does not allege facts regarding what disparate impact she suffered based on her status as a female. Ultimately, Plaintiff's Amended Complaint fails to sufficiently plead an equal protection claim against Defendant Martinez and as such, the Court **RECOMMENDS** Defendant Martinez's Motion to Dismiss be **GRANTED** and Plaintiff's equal protection claim against Defendant Martinez be **DISMISSED**. (Doc. 16).

C.   *Qualified Immunity*

"Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 622 (N.D. Tex. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an affirmative defense that must be pled. *Id.* (citing *Gomez v. Toledo*, 446

U.S. 635, 640 (1980)). The Individual Defendants raised the defense in the instant Motion to Dismiss. (Doc. 10).

After a defendant asserts qualified immunity, the burden shifts to the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *See Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). The Fifth Circuit does not require that "an official demonstrate that he did not violate clearly established federal rights." *Id.* (citing *Salas*, 980 F.2d at 306). That burden falls solely on the plaintiff.

Courts apply a two-part inquiry when deciding whether an official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court must decide "whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right." *Id.* If there was no violation, no further inquiry is necessary. *Id.* However, if the plaintiff sufficiently pleads a constitutional violation, the court must then decide "whether the right at issue was clearly established at the time of the government official's alleged misconduct." *Bradyn S.*, 407 F. Supp. 3d at 622–23 (citing *Saucier*, 544 U.S. at 201). Under *Pearson v. Callahan*, district courts are allowed to exercise their discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009). The second prong of the two-part inquiry involves two questions. *See Bradyn S.*, 407 F. Supp. 3d at 623 (citations omitted). The first inquiry is "whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident." *Id.* (citations omitted) (alterations in original). If so, the second inquiry is "whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law." *Id.* (citations omitted) (alterations in original).

When considering a qualified immunity defense raised in the context of a Rule 12(b)(6) motion to dismiss, the Court must decide whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citations omitted). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* "*After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.' " *Id.* (emphasis in original) (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 506 (5th Cir. 1987)). "For there to be liability under [§] 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed." *King v. Louisiana*, 294 F. App'x 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

Here, the allegations against Defendant Martinez fail to overcome qualified immunity. As discussed at length above, Plaintiff's Amended Complaint fails to allege Defendant Martinez's personal involvement in any alleged constitutional deprivations. In fact, this Court has found that neither of Plaintiff's § 1983 claims against Defendant Martinez plead a constitutional violation capable of surviving Rule 12(b)(6) muster. In sum, there are no allegations to overcome the Individual Defendants' claim of qualified immunity.

Thus, the Court **RECOMMENDS** Plaintiff's § 1983 claims against Defendant Martinez be **DISMISSED**, as they are barred by qualified immunity. (Doc. 16).

D.  *Plaintiff's Request for Leave to Amend*

In her Response, Plaintiff requests in the alternative that the Court grant her leave to amend her complaint for a second time. (Doc. 17 at 7). Federal Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). Rule 15(a) "favors granting leave to amend unless a substantial reason exists, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.' " *Smith v. McDonough*, SA-22-CV-01383-JKP, 2023 WL 5918322, at *9 (W.D. Tex. Sept. 8, 2023) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)). Based on this rationale, courts typically provide plaintiffs with the opportunity to amend a complaint before dismissal; however, dismissal "is appropriate when the plaintiff was previously provided ample opportunity to cure the deficiencies. *Id.* (citing *Foman v. Davis*, 371 U.S. 182, 182 (1962); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

In this case, Plaintiff already amended her complaint once as of right. Further, Plaintiff makes only a cursory mention of her request to amend, does not state the substance of her proposed amendment, nor does she attach a second amended complaint for the Court. Accordingly, the Court finds Plaintiff has been given ample opportunity to cure deficiencies in her complaint, and further amendment would be futile. *See Smith*, 2023 WL 5918322, at *9. Thus, Plaintiff's Request to amend her complaint is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** Defendant Martinez's Motion to Dismiss be **GRANTED** and that Plaintiff's claims against Marisela Martinez be **DISMISSED WITH PREJUDICE**. (Doc. 16).

SIGNED this 26th day of July, 2024.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).