**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| JUANITA DOE, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | MO:23-CV-00091-DC-RCG |
| | § | |
| JUAN CARLOS SERNA-VENEGAS, | § | |
| *Defendant*. | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Plaintiff Juanita Doe's Motion for Default Judgment and Motion for Attorney Fees. (Docs. 40, 45).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED IN PART** and **DENIED IN PART** (Doc. 40) and Plaintiff's Motion for Attorney Fees be **GRANTED** (Doc. 45).

## I.    BACKGROUND

Plaintiff Juanita Doe ("Plaintiff"), proceeding under a pseudonym,[2] filed her Original Complaint against Juan Carlos Serna-Venegas ("Defendant"), among others,[3] on June 20, 2023. (Doc. 1). On August 7, 2023, Plaintiff amended her Complaint, which is the live pleading before the Court. (Doc. 11). Plaintiff brings seven causes of action against Defendant: (1) excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, (2) cruel and unusual punishment in violation of the Fourteenth Amendment pursuant to § 1983, (3) denial of equal

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

2. For the purposes of default judgment, Plaintiff's true name will be attached in a sealed addendum.

3. All other defendants in the case have been disposed of.

protection in violation of the Fourteenth Amendment pursuant to § 1983, (4) violation of right to bodily integrity under the Fourteenth Amendment pursuant to § 1983, (5) battery under state law, (6) false imprisonment under state law, and (7) intentional infliction of emotional distress ("IIED") state law. *Id*. at 9–20.

The relevant factual allegations are as follows. On May 27, 2021, Plaintiff was arrested and placed in the Special Housing Unit of the Midland County Jail. *Id*. at 6. Plaintiff alleges this area was concealed from the jail's video surveillance system, which was widely known to the employees of the jail. *Id*. Defendant was a jailer, employed by the Midland County Sheriff's Department. *Id*. at 2–3. On June 30, 2021, Plaintiff was in her cell when Defendant came in and closed the door most of the way behind him. *Id*. at 6. Defendant "accosted Plaintiff and compelled her to perform an oral sex act upon him," then left. *Id*. An hour or two later, Defendant came back and again accosted Plaintiff, forcing "Plaintiff to have penetrative vaginal intercourse with him, grabbing her hair and bending her over and forcefully inserting his penis into her." *Id*. During this second occasion, Defendant threatened Plaintiff with a taser "to force Plaintiff to keep quiet while he raped her." *Id*. After these two assaults, Plaintiff began making complaints to other officers, resulting in her being relocated to another unit away from Defendant. *Id*. However, before she was relocated, Defendant "came back to her cell on additional occasions and threatened her with bodily harm if she told anyone about what happened to her." *Id*. In her Complaint, Plaintiff alleges Defendant had a commercial web page on "OnlyFans.com," where he was paid to have sex with females, including inmates, and post it on his page. *Id*. at 8. Investigators later reviewing videos on Defendant's phone found at least seven different videos of Defendant having sex with inmates at the Midland County Jail. *Id*.

2

Defendant was ultimately prosecuted and convicted of six felony counts of improper sexual activity with a person in custody. (Doc. 49-2).

Summons was issued as to Defendant on June 23, 2023. (Doc. 6). Plaintiff filed the proof of service for Defendant on July 18, 2023, showing that process server Anthony Barnes served Defendant on June 30, 2023, at the Middleton Unit where he was incarcerated. (Doc. 9). Defendant's answer was due on July 21, 2023. *Id*. To date, Defendant has failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On April 25, 2025, Plaintiff filed a Motion for Clerk's Entry of Default. (Doc. 36). On April 28, 2025, the Clerk of Court entered default against Defendant. (Doc. 37). On May 28, 2025, Plaintiff filed her Motion for Default Judgment. (Doc. 40).

Plaintiff seeks an award of: (1) $2,000,000.00 in actual damages for past and future mental anguish and psychological and emotional pain and suffering; (2) $7,500,000.00 in punitive damages;[4] (3) $29,439.50 in attorney fees and $1,067.00 in costs pursuant to 42 U.S.C. § 1988. (Docs. 44, 45). Plaintiff also seeks several findings from the Court: (1) Defendant violated the Fourteenth Amendment pursuant to § 1983, (2) Defendant committed sexual assault of Plaintiff, (3) Defendant intentionally inflicted emotional distress on Plaintiff, and (4) the actions of Defendant against Plaintiff were committed intentionally. (Doc. 40 at 2–3).

A hearing was held on the instant Motion for Default Judgment on June 27, 2025. (Doc. 47). Accordingly, this matter is now ready for disposition.

## II.    LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to

---

4. At the hearing on Plaintiff's Motion for Default Judgment, the Court granted an oral motion to update Plaintiff's actual and punitive damage requests, which is the reason the stated amounts differ from the requests in the Motion. (Doc. 47).

3

plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id.* The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish her entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Third, the court determines what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

4

### III. DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment against Defendant.

### 1. Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendant's total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since, over the course of this case, Defendant has not responded to the summons and complaint, the entry of default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant had over two years to respond to Plaintiff's claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendant's inaction for this lengthy time. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good

cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

## 2. Default Judgment is Substantively Warranted

Due to the entry of default, Defendant is deemed to have admitted the allegations outlined in Plaintiff's Original Petition. *See Nishimatsu Constru.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for her claims to relief. *See id.* The Fifth Circuit looks to case law on Federal Rule of Civil Procedure 8 to guide this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.*

As a preliminary matter, Plaintiff alleges four causes of action for violations of constitutional rights pursuant to § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States[] and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendant was employed by the Midland County Sheriff's Department and was clothed with the authority of state law when he committed the

6

alleged actions. Finding the condition satisfied, the Court addresses each of Plaintiff's seven causes of action in turn.

### i.    Plaintiff's Excessive Force Claim

A well-pleaded claim for excessive force "must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal quotations omitted). Plaintiff's Complaint alleges Defendant "accosted Plaintiff and compelled her to perform an oral sex act upon him," then came back some time later and "forced Plaintiff to have penetrative vaginal intercourse with him, grabbing her hair and bending her over and forcefully inserting his penis into her." (Doc. 11 at 6). Further, the Complaint asserts Defendant used physical force against Plaintiff, a pre-trial detainee, when no force was necessary. *Id*. at 10. These factual allegations plausibly establish Plaintiff suffered an injury which directly resulted from an excessive use of force that was objectively unreasonable. *See Peña*, 879 F.3d at 619. Accordingly, the Court finds Defendant engaged in excessive force in violation of the Fourth Amendment against Plaintiff by sexually assaulting her.

### ii.    Plaintiff's Cruel and Unusual Punishment and Violation of Right to Bodily Integrity Claims

Plaintiff brings causes of action for both cruel and unusual punishment and a violation of right to bodily integrity under the Fourteenth Amendment. (Doc. 11 at 12, 16). As Plaintiff correctly provides, a pretrial detainee is not covered by the Eighth Amendment's prohibition against cruel and unusual punishment. *Scott v. Moore*, 85 F.3d 230, 234–35 (5th Cir. 1996), *rev'd on other grounds*, 114 F.3d 51 (5th Cir. 1997) (en banc) ("The sexual assault on [plaintiff] while she was a pre-trial detainee is not covered by the Eighth Amendment. . . ."). Instead,

7

pretrial detainees are entitled to protections under the Due Process Clause of the Fourteenth Amendment, which protects an individual's liberty interest in bodily integrity. *Id*. Thus, the Court will consider Plaintiff's causes of action together as violations of the Fourteenth Amendment.

Pretrial detainees may bring Fourteenth Amendment claims under two alternative theories: (1) an episodic act or omission claim or (2) a condition of confinement claim. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc)). An episodic acts or omissions claim "faults specific jail officials for their acts or omissions." *Est. of Henson v. Wichita County*, 795 F.3d 456, 463 (5th Cir. 2015). Plaintiff's allegations here are properly construed as episodic acts by Defendant. *See Scott*, 114 F.3d at 53 (characterizing the suit arising out of a jailer sexually assaulting a pretrial detainee as an episodic acts or omission case). If a pretrial detainee bases his claim upon a jail official's episodic acts or omissions, the standard of subjective deliberate indifference applies. *Hare*, 74 F.3d at 645 (referring to jailers failing to provide basic human needs, such as medical care or protection from harm). "A jail official violates a pretrial detainee's constitutional right to be secure in [her] basic human needs only when the official had 'subjective knowledge of a substantial risk of serious harm' to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety." *Est. of Henson*, 795 F.3d at 464 (quoting *Hare*, 74 F.3d at 645) (internal citation omitted).

In factually similar cases, district courts in this Circuit have questioned whether deliberate indifference is the appropriate standard for analyzing a claim of sexual assault by a jailer against a pretrial detainee. *See Lamas v. Hale County*, No. 20-CV-216, 2021 WL 4822840,

8

at *1 (N.D. Tex. July 30, 2021); *Derouen v. Aransas Cnty. Det. Ctr.*, No. 22-CV-00292, 2023 WL 3232622, at *8 (S.D. Tex. Mar. 20, 2023); *Rehart v. Tom Green Cnty. Jail*, No. 22-CV-00071, 2025 WL 836600, at *8 (N.D. Tex. Jan. 27, 2025). Instead, looking to the Third and Tenth circuits, these courts relied upon the excessive force framework. *Lamas*, 2021 WL 4822840, at *1. To sufficiently state an excessive force claim, a pretrial detainee must show that the force purposefully and knowingly used against her was objectively unreasonable. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Whether the proper standard is subjective deliberate indifference or objective unreasonableness, the Court need not decide because, either way, Plaintiff sufficiently states a claim for a violation of bodily integrity. *See Rehart*, 2025 WL 836600, at *8 n.10 (holding the plaintiff cannot prevail under either standard). On more than one occasion, Defendant intentionally and forcefully fondled and raped Plaintiff. (Doc. 11 at 6). The Court finds there is no legitimate purpose for a jailer sexually assaulting a detainee, and Defendant knew of the substantial risk of serious harm that assaulting Plaintiff would cause but deliberately did so anyway. Accordingly, Plaintiff properly states a claim for violation of her bodily integrity under the Due Process Clause of the Fourteenth Amendment against Defendant for the alleged sexual assault.

### iii.    Plaintiff's Denial of Equal Protection Claim

"A violation of equal protection occurs . . . when [a state actor] treats someone differently than others similarly situated." *Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022) (per curiam) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). "A plaintiff must allege . . . that [s]he received treatment different from that received by similarly situated individuals and that the unequal treatment

stemmed from a discriminatory intent." *Id*. (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). Further, "[d]iscriminatory purpose in an equal protection context implies the decision maker selected a particular course of action in part because of, and not just in spite of, the adverse impact it would have on an identifiable group." *Miguel v. Jack*, No. 23-CV-697, 2023 WL 6466231, at *6 (W.D. Tex. Oct. 4, 2023) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

In support of this claim, Plaintiff alleges she is a woman, and therefore, a member of a protected class. (Doc. 11 at 14). Plaintiff, providing no other factual allegations, seems to ask the Court to infer that because Defendant committed acts of sexual assault against only women, including Plaintiff, this is a violation of the equal protection clause. However, factually similar cases before district courts in our Circuit—following the Fifth Circuit case, *Doe v. Taylor Independent School District*—take a different approach. 15 F.3d 443 (5th Cir. 1994). In *Taylor*, a school-aged girl was sexually abused by a school employee, and the Fifth Circuit found a violation of the plaintiff's substantive due process rights. *Id*. at 458. The court reasoned that because the damages she could recover from a violation of her equal protection rights would not be any more extensive than the damages she could recover based on the substantive due process violation, it need not reach the question of whether the plaintiff stated an equal protection claim. *Id*. Following the *Taylor* court, district courts in this Circuit have both declined to differentiate between a substantive due process and equal protection claim with these facts and some have gone further to say an equal protection claim likely cannot be recognized in the context of sexual assaults. *Compare Brittany B v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007) (declining to address the distinction between the plaintiff's substantive due process and equal protection claims); *and Harris v. Parker*, 512 F. Supp. 3d 714, 720 (S.D. Miss. 2021) (noting sexual

harassment is a violation of equal protection but addressing only the plaintiff's bodily integrity claims); *with Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 652 (S.D. Tex. June 13, 2012) (explaining the Fifth Circuit has not explicitly recognized that a state actor's isolated sexual assault of an individual could constitute a violation of the Equal Protection Clause); *and Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596, 613 (E.D. Tex. 1988) (stating the court was unable to find a case recognizing an equal protection claim in the context of sexual assault).

This Court, in the context of default judgment, does not find it necessary to distinguish between Plaintiff's claims for substantive due process and equal protection. As such, having found above that Plaintiff stated a claim for a violation of bodily integrity, the Court declines to consider Plaintiff's claim for a violation of the Equal Protection Clause under the Fourteenth Amendment.

### iv.    Plaintiff's Battery Claim

Plaintiff also brings numerous state law tort claims. Under the Texas Penal Code, the common law concepts of assault and battery are combined into the definition of assault.[5] *City of Watauga v. Gordon*, 434 S.W.3d 586, 589–90 (Tex. 2014). The statue provides a person commits an assault if the person either: (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. TEX. PEN. CODE § 22.01(a); *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967) ("Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive

---

5. The elements of civil and criminal assault under Texas law are the same. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010).

and insulting."). The Court finds Defendant's sexual assault of Plaintiff clearly establishes her battery claim.

### v. Plaintiff's False Imprisonment Claim

The essential elements of false imprisonment under Texas state law are: "(1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Plaintiff bears the burden of proving each of the three elements. *Id*. False imprisonment is "committed when a man intentionally deprives another of [her] liberty without the other's consent and without adequate legal justification." *Whirl v. Kern*, 407 F.2d 781, 797 (5th Cir. 1968). Here, Plaintiff does not argue she was unlawfully arrested or incarcerated. Rather, Plaintiff asserts Defendant physically confined and restrained her against her will and without authority of law while he sexually assaulted her. (Doc. 11 at 18). Admittedly, this is an interesting argument, but the Court ultimately cannot find support for it. This is because, while Defendant did physically restrain Plaintiff and keep her from moving, Plaintiff was already lawfully confined to a jail cell. Thus, the Court does not find Plaintiff carried her burden in showing Defendant willfully detained her within the proper context of a false imprisonment claim.

### vi. Plaintiff's IIED Claim

Plaintiff's final cause of action is the Texas law tort of IIED. This tort requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the conduct caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex. 1993). "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.'" *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004) (quoting *Twyman*, 855 S.W.2d at 621). The Texas Supreme Court has repeatedly recognized that an IIED claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no other* recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (emphasis added). Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Hoffmann-La Roche*, 114 S.W.3d at 447.

A claim for assault and battery has been recognized to fill any "gap" that would be covered by IIED, thus the IIED claim would not be recoverable. *Id*. However, when the plaintiff alleges conduct that is separate and apart from defendant's assaultive behavior, an IIED claim may be maintained alongside the assault and battery claim. *Conley v. Driver*, 175 S.W.3d 882, 888 (Tex. App.—Texarkana 2005, pet. denied); *Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 601 (S.D. Tex. 2011). Here, Plaintiff not only alleges facts that Defendant committed a battery by sexually assaulting her, but Plaintiff also pleads Defendant threatened her with a taser "to force Plaintiff to keep quiet while he raped her" and Defendant "came back to her cell on additional occasions and threatened her with bodily harm if she told anyone about what happened to her." (Doc. 11 at 6). Plaintiff alleges that as a result she has suffered severe and extreme emotion pain, anguish, and hurt. *Id*. at 13. Given the context of default judgment and the nature of the case involving a jailer and a vulnerable detainee, the Court finds Plaintiff has sufficiently pleaded a claim for IIED.

**3. Plaintiff's Right to Relief**

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On June 27, 2025, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of damages. (*See* Doc. 47). At the hearing, Plaintiff orally amended her damages request as follows: (1) $2,000,000 for past and future mental anguish and psychological and emotional pain and suffering and (2) $7,500,000 in punitive damages. In support of these requests, Plaintiff testified as to her injuries. Additionally, Plaintiff provided a Motion for Attorney Fees and a Bill of Costs seeking $29,439.50 in attorney fees and $1,067.00 in costs. (Docs. 44, 45, 46).

     **i.  Findings**

Plaintiff requests the Court make findings that Defendant violated the Fourteenth Amendment, Defendant committed sexual assault, and Defendant's conduct was intentional. (Doc. 40 at 2–3). The evidence presented in support of Plaintiff's Motion for default judgment includes (1) records of Defendant's criminal prosecution, including the judgment and sentence, for his conduct alleged in this suit; and (2) Plaintiff's testimony at the evidentiary hearing where she fully incorporated the facts alleged in the Complaint. As the Court stated above, the facts Plaintiff alleges are sufficient to state a violation of the Fourteenth Amendment. Further, this evidence supports a finding that Defendant committed sexual assault and Defendant's conduct towards Plaintiff was intentional. *See DeLeon v. Cantrell*, No. 16-CV-00038, 2018 WL 6033261, at *4 (N.D. Tex. Nov. 1, 2018) (making a similar finding), *R. & R. adopted*, 2018 WL 6024689 (N.D. Tex. Nov. 16, 2018).

ii.   **Non-Economic Damages**

Non-economic damages include compensation for pain, suffering, mental anguish, disfigurement, and physical impairment. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). The factfinder is given broad discretion in determining such damages. *Palafox v. Zamudio*, No. 22-CV-73, 2023 WL 5173765, at *7 (S.D. Tex. June 12, 2023). A plaintiff can show past pain and suffering through testimony or circumstantial evidence of physical pain. *Sw. Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no writ). "Evidence of continuing pain may support an award for pain and suffering in the future." *Flynn v. Racicot*, No. 09-11-00607-CV, 2013 WL 476756, at *6 (Tex. App.—Beaumont 2013, no pet.).

"Mental anguish is defined as intense pain of body or mind or a high degree of mental suffering." *Hicks v. Ricardo*, 834 S.W.2d 587, 590 (Tex. App.—Houston [1st Dist.] 1992, no writ.). Texas authorizes damages for mental anguish in virtually all physical injury actions. *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997). However, even when an occurrence is of the type for which mental anguish damages are recoverable, the plaintiff must present (1) "direct evidence of the nature, duration, and severity of the mental anguish, thus establishing a substantial disruption to daily life"; or (2) "other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *SunBridge Healthcare Corp. v. Penny*, 160 S.W.2d 230, 251 (Tex. App.—Texarkana 2005, no pet.) (citing *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)).

In support of an award of non-economic damages, Plaintiff testified as to the impact Defendant's conduct had on her and how it continues to affect her more than four years later. Plaintiff described experiencing feelings of depression, sadness, loneliness, hopelessness, guilt,

anger, fear, and anxiety. She stated she had feelings of being unsafe; she feared being assaulted again, and she did not feel safe around law enforcement. Plaintiff has developed insomnia, and she experiences nightmares and flashbacks about what Defendant did. She described losing interest in life and not wanting to be around other people, including her family. Due to what happened, Plaintiff ultimately separated from her husband, which she in part attributes to the effects of Defendant's conduct. Plaintiff is no longer involved in her church or her children's activities due to fear of judgment from others and guilt about what happened. Finally, Plaintiff stated her mental anguish and psychological pain and suffering has not improved at all within the years since the alleged conduct. Thus, the Court finds an award of $2,000,000 to Plaintiff for past and future mental anguish and psychological and emotional pain and suffering.

### iii.   Punitive Damages Pursuant to 42 U.S.C. § 1983

Additionally, Plaintiff seeks punitive damages pursuant to § 1983.[6] (Doc. 43). The Supreme Court has found punitive damages can be awarded "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). When considering punitive damages, courts must ensure the award is not grossly excessive. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). The Supreme Court identified three factors to determine whether a plaintiff's request is reasonable: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm or potential harm

---

6. While Plaintiff's brief on punitive damages explains the Court may award punitive damages separately under her federal and state law claims, Plaintiff does not request a distinct sum under each theory. (Doc. 43 at 6). Because the Court can award Plaintiff her entire punitive damages request under her federal law claims, the Court does not find it necessary to analyze punitive damages under Plaintiff's state law claims. *DeLeon*, 2018 WL 6033261, at *4 (holding (1) the plaintiff cannot recover punitive damages under both his federal and state law claims arising from the same conduct and (2) his recovery is greater under federal law than Texas law).

suffered by the plaintiff and her punitive damages award; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. *Id.*

First, it is without question Defendant's conduct is reprehensible. Defendant used his position of power and authority as a jailer to prey on vulnerable, incarcerated women. Defendant demanded sexual favors, forcibly raped, and threatened Plaintiff with bodily harm. Defendant's conduct was more than sufficiently reprehensible to warrant imposition of Plaintiff's punitive damages request. Second, Plaintiff seeks an award of punitive damages in an amount 3 ¾ times that of her actual damages. While the Supreme Court has not provided a bright-line rule regarding a constitutionally appropriate ratio, the Court has said that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm v. Campbell*, 538 U.S. 408, 425 (2003). Further, the Court has provided that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* (citing *Pac. Mut. Life Ins. v. Haslip*, 499 U.S. 1, 23–24 (1999)). Because Plaintiff's punitive damages request is less than four times that of her actual damages, the Court finds the request is not excessive. Finally, the Court must compare Plaintiff's request to the penalties awarded in comparable cases. Due to the conduct in this case, there is no civil penalty regime that would apply. *See DeLeon*, 2018 WL 6033261, at *4 (awarding punitive damages against a high school principal who sexually abused students). Accordingly, the Court finds an award of $7,000,000 in punitive damages is appropriate and just under the circumstances.

### iv.     Attorney Fees and Costs

Finally, Plaintiff's counsel, Robert S. Hogan, seeks $29,439.50 in attorney fees and $1,067.00[7] in costs pursuant to 42 U.S.C. § 1988. (Doc. 8 at 3). This statute establishes that, in an action to enforce § 1983, the prevailing party is entitled to recover attorney fees and costs. 42 U.S.C. § 1988(b).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9)

---

7. Plaintiff requests a total of $30,506.50 in attorney fees and costs. (Doc. 45 at 8).

the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County.*, 16 F.3d 1214 (5th Cir. 1994)).

The time records attached to Plaintiff's Motion for Default Judgment and Mr. Hogan's declaration indicate the 64 hours spent litigating this case are well grounded and justified. (Doc. 45 at 6–13). According to the time records submitted, Mr. Hogan performed 64 hours at an hourly rate of $450, and he incurred $639.50 in investigative work. *Id*. Having reviewed Mr. Hogan's declaration, the Court finds this hourly rate is reasonable for an attorney practicing in Mr. Hogan's field with comparable experience to him. *Id*. at 6. Thus, Plaintiff should be awarded $29,439.50 in reasonable attorney fees from Defendant. The Court **RECOMMENDS** Plaintiff's Motion for Attorney Fees be **GRANTED**. (Doc. 45).

Finally, Plaintiff seeks costs of $1,067. (Doc. 44 at 1). Plaintiff provides a list of each cost, what the cost pertained to, and its amount. *Id*. Therefore, Plaintiff should be awarded $1,067 in costs from Defendant.

## IV.    RECOMMENDATION

For the aforementioned reasons, it is **RECOMMENDED** Plaintiff's Motion for Default Judgment be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 45). It is further **RECOMMENDED** Plaintiff's Motion for Attorney Fees be **GRANTED**. (Doc. 45).

It is finally **RECOMMENDED** that a final judgment be entered against Defendant as follows:

- Find Defendant violated the Fourteenth Amendment, Defendant committed sexual assault, and Defendant's conduct was intentional;

- Award Plaintiff $2,000,000 for past and future mental anguish and psychological and emotional pain and suffering;

- Award Plaintiff $7,500,000 in punitive damages; and

- Award Plaintiff $29,439.50 in attorney fees and $1,067.00 in costs.

SIGNED this 19th day of August, 2025.


_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).